**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,<br><br>              Plaintiff,<br>v.<br><br>GERARDO ALANN FELIX GARAY; MARY GARCIA ROJAS; CYNTHIA ANN ROJAS; CHRISTINA MONTECINO; GABRIEL ROJAS; ANITA ROJAS, individually and as a Guardian ad Litem for BRANNON JONAH CLAYTON; and DOES 1 to 50, inclusive,<br><br>              Defendants.<br>_____/<br><br>MARY GARCIA ROJAS; CYNTHIA ANN ROJAS; CHRISTINA MONTECINO; GABRIEL ROJAS; and ANITA ROJAS,<br><br>              Counterclaimants.<br>v.<br><br>NATIONWIDE AGRIBUSINESS INSURANCE COMPANY; PEERLESS INSURANCE COMPANY; GOLDEN EAGLE INSURANCE CORPORATION<br><br>              Counterdefendants.<br>_____/ | 1:14-cv-00138-AWI-JLT<br><br>**ORDER PERMITTING PEERLESS INSURANCE COMPANY AND GOLDEN EAGLE INSURANCE CORPORATION TO SUBMIT BRIEFING RE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

1

**I. Introduction**

Nationwide Agribusiness Insurance Company ("Nationwide") brought suit against Defendants Gerardo Alann Felix Garay, Mary Garcia Rojas, Cynthia Ann Rojas, Christina Montecino, Gabriel Rojas, Anita Rojas, and Does 1 to 50 (collectively "Defendants") seeking a declaration that Nationwide had no duty to defend or indemnify Defendants under a commercial automobile insurance policy and umbrella policy, issued to HFS Enterprises ("HFS"), regarding a October 23, 2011 automobile accident, involving a 2001 Dodge flatbed truck ("the Vehicle"). Defendants filed a counterclaim alleging breach of the implied covenant of good faith and fair dealing against Nationwide and breach of contract and to recovery judgment against Nationwide, Peerless Insurance Company ("Peerless") and Golden Eagle Insurance Corporation ("Golden Eagle"). Defendants move for partial summary judgment, specifically seeking that the court determine that the Vehicle was a covered vehicle under the Nationwide Auto Policy. For the following reasons, the Court will permit Peerless and Golden Eagle to submit briefing before the Court adjudicates this matter.

**II. Background**

A. The Truck

HFS is a natural gas and diesel irrigation-engine leasing and selling business, owned by Jon and Julie Schuetz for approximately 25 years. Joint Statement of Undisputed Facts ("JSUF") at ¶ 22. In 2003, HFS purchased the 2001 Dodge flatbed truck ("the Truck") that is the subject of this action. JSUF at ¶ 25. The Truck was registered with the DMV and the Certificate of Title listed HFS as registered owner. JSUF at ¶¶ 25, 27. On March 26, 2010, HFS and JSA Company ("JSA") signed a Bill of Sale, listing JSA as buyer of the Truck. JSUF at ¶ 31. Possession of the Truck was also transferred to JSA on March 26, 2010. JSUF at ¶ 34. On the same day, HFS submitted a notice of release of liability for the Truck, listing JSA as the buyer. *See* Doc. 67-4 at 9-10. The certificate of title to the Truck was provided to JSA at some point during March of 2010. JSUF at ¶ 36. However, transfer of title from HFS to JSA was rejected by the Department of Motor Vehicles ("DMV") for failure to submit proof of insurance. Defendants' Statement of Facts, Doc. 64-1 ("DSF") at ¶ 19; Plaintiff's Response to Defendants' Statement of Facts, Doc.

67-7 ("Plaintiff's Response") at ¶ 19. Although the application for transfer of title to JSA was rejected, it appears that the registered address listed for the Truck was changed from HFS's address at 30134 W. Lerdo Highway in Shafter, to JSA's address 10457 Van Horn Road in Bakersfield. Plaintiff's Response at ¶ 35; Doc. 64-7 at 12-17.

Within several weeks of HFS having transferred possession of the Truck to JSA, possession of the Truck was returned to HFS. DSF at ¶ 20; Plaintiff's Response at ¶ 20.[1] HFS kept the Truck at its lot near a high-traffic section of the Lerdo Highway in Shafter, California. Defendants' Response to Plaintiff's Statement of Facts, Doc 68-1 ("Defendants' Response") at ¶ 50. The truck was listed for sale at the HFS facility for over a year after it was returned. Defendants' Response at ¶53.

In May of 2011, HFS approached Copart, Inc. ("Copart") regarding Copart reselling the Truck. Plaintiff's Response at ¶ 24; Defendants' Response at ¶ 54. HFS provided the certificate of title, listing HFS as the registered owner, to Copart to facilitate Copart selling the Truck. Defendants' Response at ¶ 57; Plaintiff's Response at ¶ 24. Ultimately, Copart was unable to sell the truck; the truck and certificate of title were returned to HFS. Defendants' Response at ¶ 60; Plaintiff's Response at ¶ 26. After the Truck was returned to HFS by Copart, HFS placed the truck back on display in a continued attempt to sell it. Defendants' Response at ¶ 60; Plaintiff's Response at ¶ 26.

In October of 2011, Vicente Felix Acosta ("Vicente Felix") of Vicente Trucking offered to purchase the Truck for $7,500.00. Defendants' Response at ¶ 77; Plaintiff's Response at ¶ 28. JSA approved the sale price for the Truck and an HFS employee signed a document entitled "bill of sale" on behalf of HFS. Doc. 67-1 at 38. Defendants' Response at ¶¶ 78, 80. Possession of the Truck was transferred to Vicente Trucking on October 16, 2011. Defendants' Response at ¶ 86. HFS did not deliver the Truck's certificate of title to Vicente Trucking. Defendants' Response at

---

[1] A dispute exists as to when the physical certificate of title to the Truck was returned by JSA to HFS. Defendant's Response at ¶¶ 49, 55. Accordingly to Defendants, JSA returned the certificate of title to HFS along with possession of the vehicle. Plaintiff's Response at ¶ 20. Plaintiff contends that the certificate of title was not returned until HFS sought to market the vehicle through Copart, Inc., approximately a year after the Truck was returned by JSA to HFS. Defendants' Response at ¶¶ 54-55. The evidence cited by Defendants supports Nationwide's version of the events; JSA brought "the pink slip back to [HFS], after the fact, when [HFS] w[as] … trying to sell the vehicle on their behalf, and we took it to Copart." Julie Schuetz Decl. at 58:1-4; *See* Jonathan Schuetz Decl. at 23:15-24.

3

¶ 81. After the purchase, Jonathan Schuetz of HFS delivered the $7,500.00 purchase amount to Stanley Antongiovanni of JSA. Defendants' Response at ¶ 82.

     Mr. Felix did not submit any paperwork to the DMV prior to October 23, 2011. Plaintiff's Response at ¶ 33. On October 23, 2011, the DMV records showed that HFS was the registered owner of the Truck. Plaintiff's Response at ¶ 34. A dispute exists as to when HFS submitted the notice of release of liability as to the Vicente Trucking sale to the DMV. According to Nationwide, notice was mailed before the accident, on October 17, 2011. Defendants' Response at ¶¶ 116, 179. The mailed notice was never recorded by the DMV. Defendants' Response at ¶ 179. Defendants contend that notice was not provided until HFS submitted an internet notice of transfer and release of liability on November 16, 2011. Plaintiff's Response at ¶¶ 36; Defendants' Response at ¶ 116, 179.

    B.  The Accident

     After Vicente Trucking took possession of the Truck, it was brought to Vicente Felix's home in Wasco then to the home of Mr. Felix's brother-in-law, Luis Garay, in Bakersfield. Defendants' Response at ¶¶ 87-88. At Mr. Garay's home, a trailer hitch and electric braking system were installed on the truck to facilitate pulling a "gooseneck" trailer. Defendant's Response at ¶¶ 88-89. On October 23, 2011, Gerardo Garay, Vicente Felix's nephew, was driving the Truck with an attached trailer to Mr. Felix's home in Wasco when he was involved in an accident with a 2002 Honda Accord. Plaintiff's Response at ¶ 32; First Amended Complaint ("FAC") at ¶ 22. The Honda Accord contained: driver Mary Rojas, her husband Ruben Rojas, and her grandson Brannon Clayton. Third Amended Counterclaim ("TACC") at ¶25. Ruben Rojas was fatally injured; Mary Rojas and Brannon Clayton were seriously injured. TACC at ¶ 25.

    C.  The Policies

       i.  The Nationwide & HFS Auto and Umbrella Policies

     Nationwide issued a Commercial Auto Policy ("the Nationwide Auto Policy"), policy number CU 119496A, and a Commercial Umbrella Policy ("the Nationwide Umbrella Policy") to HFS Enterprises, effective May 25, 2011 to May 25, 2012. JSUF at ¶¶ 1-2. The Nationwide

Auto Policy has a $1,000,000.00 liability limit per accident and the Nationwide Umbrella Policy has a $1,000,000.00 per occurrence limit. JSUF at ¶¶ 6, 13.

Under the Nationwide Auto Policy, Nationwide is required to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" JSUF at ¶ 5. Nationwide also has the duty to defend the insured in any suit seeking those damages. JSUF at ¶ 5. The Nationwide Auto Policy provides liability coverage for "any 'Auto.'" JSUF at ¶ 3. An "Auto" for purposes of the Nationwide Auto Policy is "[a] land motor vehicle, 'trailer' or semitrailer designed for travel on public roads." An "insured" is "any person or organization" listed in the "Who Is An Insured" provision of the Nationwide Auto Policy. JSUF at ¶ 9. That provision lists the following as "insureds": "(a) [HFS] for any covered auto; [¶] (b) Anyone else while using with your permission a covered 'auto' you own, hire or borrow[,] except … (1) [t]he owner or anyone else from whom you hire or borrow a covered 'auto….'" JSUF at ¶ 10.

The Nationwide policy did not require HFS create an exhaustive list autos for a schedule of covered autos prior to the coverage period. Defendants' Response at ¶ 140. Instead, Nationwide charged an estimated premium at the outset, and then calculated a composite rate at the end of the coverage period based on the average number of autos that HFS owned during the policy period. Defendants' Response at ¶¶ 140-141. Although the schedule of autos was not exhaustive, the Truck was not listed on that schedule at the outset of the policy period or added at the close of the policy period. Defendants' Response at ¶¶ 143, 147. HFS did not pay any premium for coverage of the Truck. *See* Defendants' Response at ¶¶ 144-145.

Similar to the Nationwide Auto Policy, the Nationwide Umbrella Policy requires nationwide to "pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which this insurance applies…." JSUF at ¶ 12. That policy acts as an excess policy with coverage for damage and injuries – for purposes of this action – coextensive with the Nationwide Auto Policy. *See* JSUF at ¶¶ 19-21.

    ii.    The Peerless, JSA, & Ten Star Auto Policy

5

Peerless issued a commercial auto policy, identified as policy no. BA 8561129, to JSA for the policy period of January 1, 2010 to January 1, 2011 ("Peerless Auto Policy"). Defendants' Response at ¶ 42. On or about April 6, 2010, Peerless issued a "Policy Change Endorsement" adding the Truck to the Peerless policy, effective March 30, 2010. Defendants' Response at ¶ 43; Doc. 67-4 at 56. Peerless renewed the Peerless Auto Policy for the policy period of January 1, 2011 to January 1, 2012. Defendants' Response at ¶ 64. That policy continued to list the Truck on the schedule of covered autos. Defendants' Response at ¶ 65; Doc 67-4 at 183.[2] The Peerless Auto Policy had a $1,000,000.00 per accident liability limit for "covered autos." Defendants' Response at ¶ 72; Doc. 67-4 at 176.

Under the Peerless Auto Policy, Peerless must pay "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which th[e] insurance applies, caused by an 'accident' and resulting from … use of a covered auto." Doc. 67-4 at 282. An insured includes "[a]nyone ... using with [the insurance purchaser's permission] a covered 'auto' you own, hire, or borrow…." Doc. 67-4 at 282.

   iii.   The Golden Eagle, JSA, & Ten Star Excess Policy

Golden Eagle issued Ten Star and JSA an excess liability policy, identified as policy no. CU 8834878, for the policy period of February 15, 2011 to February 15, 2012 ("GE Excess Policy"). Defendants' Response at ¶ 74. The GE Excess Policy lists the Peerless Auto Policy on its schedule of underlying insurance. Defendants' Response at ¶ 76. The GE Excess policy would cover JSA and Ten Star's liability from an automobile accident that exceeds the $1,000,000.00 Peerless Auto policy limit, up to the GE Excess Policy $5,000,000.00 per occurrence limit. *See* Defendants' Response at ¶ 75.

D. The Underlying Action

On November 15, 2011, a complaint was filed by the Mary Rojas, Cynthia Ann Rojas, Christina Montecino, Gabriel Rojas, Anita Rojas, and Brannon Jonah Clayton against Gerardo

---

[2] That policy was cancelled in February of 2012 and replaced by a policy on behalf of Ten Star Farming, Inc. ("Ten Star"), a corporate entity tied to JSA and the Antongiovanni family that had taken over some of JSA's farming operations. Defendants' Response at ¶¶ 67-69. That policy – for purposes of this action – was identical. *See* Doc. 67-4 at 263, 269, 277, 282.

Garay and HFS based on the automobile accident ("the Underlying Action"). TACC at ¶ 27. Nationwide defended HFS in the Underlying Action until the plaintiffs in that action dismissed their claims against HFS on September 23, 2013. FAC at ¶ 27. Prior to dismissal of HFS, Plaintiffs in the Underlying Action demanded $1 million under the Nationwide Auto Policy and $1 million under the Nationwide Umbrella Policy. FAC at ¶ 28. Nationwide rejected both demands. The plaintiffs in the underlying action took the matter to trial against Gerardo Garay. FAC at ¶ 31. On January 31, 2014, the jury in the underlying action returned a verdict against Garay in the amount of $2,798,655.71.

## IV. Discussion

In this action, Defendants seek a determination that Nationwide, Peerless, and Golden Eagle covered the Truck at the time of the accident and that any or all of them are responsible for paying the judgment returned in the underlying action. For purposes of the motion presently before the Court, Defendants seek only partial summary judgment against Nationwide.

According to the Nationwide Auto Policy and the Peerless Auto Policy, the respective insurers must pay all sums that an insured must pay as damages because of bodily injury or property damage, caused by an accident, and resulting from use of a covered auto. Doc. 46-6 at 26; Doc. 67-4 at 282. There is no dispute that the Truck was involved in an accident that caused bodily injury and property damage. Plaintiff's Response at ¶ 32. There is also no dispute that the Truck, for purposes of the Nationwide Auto Policy, was a covered auto because the policy noted that "any auto" is a covered auto. Doc. 64-6 at 13. Although Peerless has not briefed the issue, a preliminary review of its policy reveals that the Truck was listed on the schedule of covered autos and would appear to be a covered auto. The only question remaining is whether Mr. Garay was an insured within the meaning of either the Nationwide Auto Policy or the Peerless Auto Policy on October 23, 2011.

Defendants contend that Gerardo Garay is an insured under the omnibus clause of the Nationwide Auto Policy; i.e., that on October 23, 2011 (1) HFS owned or borrowed the Truck, and (2) Gerardo Garay used the Truck with the permission of HFS. *See* Doc. 64-6 at 26. Nationwide contends, among other things, that HFS was no longer the owner of the vehicle – for

7

purposes of the omnibus clause – after it complied with California Vehicle Code §§ 5600, 5602, and 5900, in releasing liability as to the Truck after the bona fide sale to JSA.

The Court has fully read and reviewed Defendants' and Nationwide's briefings. A determination of this matter on the merits would likely impact Peerless' and Golden Eagle's interests. In fairness to Peerless and Golden Eagle the Court will not adjudicate the matter until both are given the opportunity to defend their interests. The Court will permit Peerless and Golden Eagle[3] to submit briefing regarding whether Gerardo Garay was an insured under the omnibus clause of the Peerless Auto Policy, specifically addressing their positions on the ownership of the Truck on October 23, 2011.[4] If Peerless and/or Golden Eagle elect to do so, such briefing must be submitted within fourteen (14) days of the date of this order. If Peerless and Golden Eagle submit such briefing, Defendants and Nationwide will each be permitted to file a response within seven (7) days of the filing of the Peerless and Golden Eagle brief (or the later of the filings if Peerless and Golden Eagle submit separate briefs).

IT IS SO ORDERED.

Dated: __January 12, 2016__      _____
                                 SENIOR DISTRICT JUDGE

---

[3] Because the interests of Peerless and Golden Eagle appear to be in line here, and because they are both owned by Liberty Mutual Group, the Court anticipates that Peerless and Golden Eagles will submit a joint brief.

[4] The Court notes that Peerless and Golden Eagle raised additional affirmative defenses beyond its affirmative defense that is presently implicated – that the judgment in the underlying action is not against a Peerless insured. Peerless and Golden Eagle need not brief any issue not identified by the Court. Only addressing the items addressed by the Court will not be read as a waiver of additional affirmative defenses.