**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, | 1:14-cv-00138-AWI-JLT |
| Plaintiff, | **ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST NATIONWIDE** |
| v. | |
| GERARDO ALANN FELIX GARAY; MARY GARCIA ROJAS; CYNTHIA ANN ROJAS; CHRISTINA MONTECINO; GABRIEL ROJAS; ANITA ROJAS, individually and as a Guardian ad Litem for BRANNON JONAH CLAYTON; and DOES 1 to 50, inclusive, | |
| Defendants. | |

_____/

MARY GARCIA ROJAS; CYNTHIA ANN ROJAS; CHRISTINA MONTECINO; GABRIEL ROJAS; and ANITA ROJAS,

Counterclaimants.

v.

NATIONWIDE AGRIBUSINESS INSURANCE COMPANY; PEERLESS INSURANCE COMPANY; GOLDEN EAGLE INSURANCE CORPORATION

Counterdefendants.

_____/

# I. Introduction

Nationwide Agribusiness Insurance Company ("Nationwide") brought suit against Defendants Gerardo Alann Felix Garay, Mary Garcia Rojas, Cynthia Ann Rojas, Christina Montecino, Gabriel Rojas, Anita Rojas, and Does 1 to 50 (collectively "Defendants") seeking a declaration that Nationwide had no duty to defend or indemnify Defendants under a commercial automobile insurance policy and umbrella policy, issued to HFS Enterprises ("HFS"), regarding a October 23, 2011 automobile accident, involving a 2001 Dodge flatbed truck ("the Vehicle"). Defendants filed a counterclaim alleging breach of the implied covenant of good faith and fair dealing against Nationwide and breach of contract and to recovery judgment against Nationwide, Peerless Insurance Company ("Peerless") and Golden Eagle Insurance Corporation ("Golden Eagle"). Defendants move for partial summary judgment, specifically seeking that the Court determine that the Vehicle was a covered vehicle under the Nationwide Auto Policy. The Court permitted Peerless and Golden Eagle to submit briefing and it permitted Nationwide and Defendants to respond. All briefing has been submitted.

# II. Background

A.  The Truck

HFS is a natural gas and diesel irrigation-engine leasing and selling business, owned by Jon and Julie Schuetz for approximately 25 years. Joint Statement of Undisputed Facts ("JSUF") at ¶ 22. In 2003, HFS purchased the 2001 Dodge flatbed truck ("the Truck") that is the subject of this action. JSUF at ¶ 25. The Truck was registered with the DMV and the Certificate of Title listed HFS as registered owner. JSUF at ¶¶ 25, 27. On March 26, 2010, HFS and JSA Company ("JSA") signed a Bill of Sale, listing JSA as buyer of the Truck. JSUF at ¶ 31. Possession of the Truck was also transferred to JSA on March 26, 2010. JSUF at ¶ 34. On the same day, HFS submitted a notice of release of liability for the Truck, listing JSA as the buyer. *See* Doc. 67-4 at 9-10. The certificate of title to the Truck was provided to JSA at some point during March of 2010. JSUF at ¶ 36. However, transfer of title from HFS to JSA was rejected by the Department of Motor Vehicles ("DMV") for failure to submit proof of insurance. Defendants' Statement of Facts, Doc. 64-1 ("DSF") at ¶ 19; Plaintiff's Response to Defendants' Statement of Facts, Doc.

67-7 ("Plaintiff's Response") at ¶ 19. Although the application for transfer of title to JSA was rejected, it appears that the registered address listed for the Truck was changed from HFS's address at 30134 W. Lerdo Highway in Shafter, to JSA's address 10457 Van Horn Road in Bakersfield. Plaintiff's Response at ¶ 35; Doc. 64-7 at 12-17.

Within several weeks of HFS having transferred possession of the Truck to JSA, possession of the Truck was returned to HFS. DSF at ¶ 20; Plaintiff's Response at ¶ 20.[1] HFS kept the Truck at its lot near a high-traffic section of the Lerdo Highway in Shafter, California. Defendants' Response to Plaintiff's Statement of Facts, Doc 68-1 ("Defendants' Response") at ¶ 50. The truck was listed for sale at the HFS facility for over a year after it was returned. Defendants' Response at ¶53.

In May of 2011, HFS approached Copart, Inc. ("Copart") regarding Copart reselling the Truck. Plaintiff's Response at ¶ 24; Defendants' Response at ¶ 54. HFS provided the certificate of title, listing HFS as the registered owner, to Copart to facilitate Copart selling the Truck. Defendants' Response at ¶ 57; Plaintiff's Response at ¶ 24. Ultimately, Copart was unable to sell the truck; the truck and certificate of title were returned to HFS. Defendants' Response at ¶ 60; Plaintiff's Response at ¶ 26. After the Truck was returned to HFS by Copart, HFS placed the truck back on display in a continued attempt to sell it. Defendants' Response at ¶ 60; Plaintiff's Response at ¶ 26.

In October of 2011, Vicente Felix Acosta ("Vicente Felix") of Vicente Trucking offered to purchase the Truck for $7,500.00. Defendants' Response at ¶ 77; Plaintiff's Response at ¶ 28. JSA approved the sale price for the Truck and an HFS employee signed a document entitled "bill of sale" on behalf of HFS. Doc. 67-1 at 38. Defendants' Response at ¶¶ 78, 80. Possession of the Truck was transferred to Vicente Trucking on October 16, 2011. Defendants' Response at ¶ 86. HFS did not deliver the Truck's certificate of title to Vicente Trucking. Defendants' Response at

---

[1] A dispute exists as to when the physical certificate of title to the Truck was returned by JSA to HFS. Defendants' Response at ¶¶ 49, 55. Accordingly to Defendants, JSA returned the certificate of title to HFS along with possession of the vehicle. Plaintiff's Response at ¶ 20. Plaintiff contends that the certificate of title was not returned until HFS sought to market the vehicle through Copart, Inc., approximately a year after the Truck was returned by JSA to HFS. Defendants' Response at ¶¶ 54-55. The evidence cited by Defendants supports Nationwide's version of the events; JSA brought "the pink slip back to [HFS], after the fact, when [HFS] w[as] … trying to sell the vehicle on their behalf, and we took it to Copart." Julie Schuetz Decl. at 58:1-4; *See* Jonathan Schuetz Decl. at 23:15-24.

1  ¶ 81. After the purchase, Jonathan Schuetz of HFS delivered the $7,500.00 purchase amount to

2  Stanley Antongiovanni of JSA. Defendants' Response at ¶ 82.

3          Mr. Felix did not submit any paperwork to the DMV prior to October 23, 2011.

4  Plaintiff's Response at ¶ 33. On October 23, 2011, the DMV records showed that HFS was the

5  registered owner of the Truck. Plaintiff's Response at ¶ 34. A dispute exists as to when HFS

6  submitted the notice of release of liability as to the Vicente Trucking sale to the DMV.

7  According to Nationwide, notice was mailed before the accident, on October 17, 2011.

8  Defendants' Response at ¶¶ 116, 179. The mailed notice was never recorded by the DMV.

9  Defendants' Response at ¶ 179. Defendants contend that notice was not provided until HFS

10 submitted an internet notice of transfer and release of liability on November 16, 2011. Plaintiff's

11 Response at ¶¶ 36; Defendants' Response at ¶ 116, 179.

12     B.   The Accident

13         After Vicente Trucking took possession of the Truck, it was brought to Vicente Felix's

14 home in Wasco then to the home of Mr. Felix's brother-in-law, Luis Garay, in Bakersfield.

15 Defendants' Response at ¶¶ 87-88. At Mr. Garay's home, a trailer hitch and electric braking

16 system were installed on the truck to facilitate pulling a "gooseneck" trailer. Defendants'

17 Response at ¶¶ 88-89. On October 23, 2011, Gerardo Garay, Vicente Felix's nephew, was

18 driving the Truck with an attached trailer to Mr. Felix's home in Wasco when he was involved in

19 an accident with a 2002 Honda Accord. Plaintiff's Response at ¶ 32; First Amended Complaint

20 ("FAC") at ¶ 22. The Honda Accord contained: driver Mary Rojas, her husband Ruben Rojas,

21 and her grandson Brannon Clayton. Third Amended Counterclaim ("TACC") at ¶25. Ruben

22 Rojas was fatally injured; Mary Rojas and Brannon Clayton were seriously injured. TACC at ¶

23 25.

24     C.   The Policies

25              i.   The Nationwide & HFS Auto and Umbrella Policies

26         Nationwide issued a Commercial Auto Policy ("the Nationwide Auto Policy"), policy

27 number CU 119496A, and a Commercial Umbrella Policy ("the Nationwide Umbrella Policy")

28 to HFS Enterprises, effective May 25, 2011 to May 25, 2012. JSUF at ¶¶ 1-2. The Nationwide

Auto Policy has a $1,000,000.00 liability limit per accident and the Nationwide Umbrella Policy has a $1,000,000.00 per occurrence limit. JSUF at ¶¶ 6, 13.

Under the Nationwide Auto Policy, Nationwide is required to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" JSUF at ¶ 5. Nationwide also has the duty to defend the insured in any suit seeking those damages. JSUF at ¶ 5. The Nationwide Auto Policy provides liability coverage for "any 'Auto.'" JSUF at ¶ 3.  An "Auto" for purposes of the Nationwide Auto Policy is "[a] land motor vehicle, 'trailer' or semitrailer designed for travel on public roads." An "insured" is "any person or organization" listed in the "Who Is An Insured" provision of the Nationwide Auto Policy. JSUF at ¶ 9. That provision lists the following as "insureds": "(a) [HFS] for any covered auto; [¶] (b) Anyone else while using with your permission a covered 'auto' you own, hire or borrow[,] except … (1) [t]he owner or anyone else from whom you hire or borrow a covered 'auto….'" JSUF at ¶ 10.

The Nationwide policy did not require HFS create an exhaustive list autos for a schedule of covered autos prior to the coverage period. Defendants' Response at ¶ 140. Instead, Nationwide charged an estimated premium at the outset, and then calculated a composite rate at the end of the coverage period based on the average number of autos that HFS owned during the policy period. Defendants' Response at ¶¶ 140-141. Although the schedule of autos was not exhaustive, the Truck was not listed on that schedule at the outset of the policy period or added at the close of the policy period. Defendants' Response at ¶¶ 143, 147. HFS did not pay any premium for coverage of the Truck. *See* Defendants' Response at ¶¶ 144-145.

Similar to the Nationwide Auto Policy, the Nationwide Umbrella Policy requires nationwide to "pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which this insurance applies…." JSUF at ¶ 12. That policy acts as an excess policy with coverage for damage and injuries – for purposes of this action – coextensive with the Nationwide Auto Policy. *See* JSUF at ¶¶ 19-21.

///

ii.     The Peerless, JSA, & Ten Star Auto Policy

Peerless issued a commercial auto policy, identified as policy no. BA 8561129, to JSA for the policy period of January 1, 2010 to January 1, 2011 ("Peerless Auto Policy"). Defendants' Response at ¶ 42. On or about April 6, 2010, Peerless issued a "Policy Change Endorsement" adding the Truck to the Peerless policy, effective March 30, 2010. Defendants' Response at ¶ 43; Doc. 67-4 at 56. Peerless renewed the Peerless Auto Policy for the policy period of January 1, 2011 to January 1, 2012. Defendants' Response at ¶ 64. That policy continued to list the Truck on the schedule of covered autos. Defendants' Response at ¶ 65; Doc 67-4 at 183.[2] The Peerless Auto Policy had a $1,000,000.00 per accident liability limit for "covered autos." Defendants' Response at ¶ 72; Doc. 67-4 at 176.

Under the Peerless Auto Policy, Peerless must pay "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which th[e] insurance applies, caused by an 'accident' and resulting from … use of a covered auto." Doc. 67-4 at 282. An insured includes "[a]nyone ... using with [the insurance purchaser's permission] a covered 'auto' you own, hire, or borrow…." Doc. 67-4 at 282.

iii.    The Golden Eagle, JSA, & Ten Star Excess Policy

Golden Eagle issued Ten Star and JSA an excess liability policy, identified as policy no. CU 8834878, for the policy period of February 15, 2011 to February 15, 2012 ("GE Excess Policy"). Defendants' Response at ¶ 74. The GE Excess Policy lists the Peerless Auto Policy on its schedule of underlying insurance. Defendants' Response at ¶ 76. The GE Excess policy would cover JSA and Ten Star's liability from an automobile accident that exceeds the $1,000,000.00 Peerless Auto policy limit, up to the GE Excess Policy $5,000,000.00 per occurrence limit. *See* Defendants' Response at ¶ 75.

///

///

---

[2] That policy was cancelled in February of 2012 and replaced by a policy on behalf of Ten Star Farming, Inc. ("Ten Star"), a corporate entity tied to JSA and the Antongiovanni family that had taken over some of JSA's farming operations. Defendants' Response at ¶¶ 67-69. That policy – for purposes of this action – was identical. *See* Doc. 67-4 at 263, 269, 277, 282.

1    D.  The Underlying Action

2         On November 15, 2011, a complaint was filed by the Mary Rojas, Cynthia Ann Rojas,

3    Christina Montecino, Gabriel Rojas, Anita Rojas, and Brannon Jonah Clayton against Gerardo

4    Garay and HFS based on the automobile accident ("the Underlying Action"). TACC at ¶ 27.

5    Nationwide defended HFS in the Underlying Action until the plaintiffs in that action dismissed

6    their claims against HFS on September 23, 2013. FAC at ¶ 27. Prior to dismissal of HFS,

7    Plaintiffs in the Underlying Action demanded $1 million under the Nationwide Auto Policy and

8    $1 million under the Nationwide Umbrella Policy. FAC at ¶ 28. Nationwide rejected both

9    demands. The plaintiffs in the underlying action took the matter to trial against Gerardo Garay.

10   FAC at ¶ 31. On January 31, 2014, the jury in the underlying action returned a verdict against

11   Garay in the amount of $2,798,655.71.

12                                 **III. Legal Standard**

13        "A party may move for summary judgment, identifying each claim or defense – or the

14   part of each claim or defense – on which summary judgment is sought.  The court shall grant

15   summary judgment if the movant shows that there is no genuine dispute as to any material fact

16   and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving

17   party bears the initial burden of "informing the district court of the basis for its motion, and

18   identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

19   admissions on file, together with the affidavits, if any,' which it believes demonstrate the

20   absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986);

21   *see* Fed. R. Civ. P. 56(c)(1)(A).

22        "Where the non-moving party bears the burden of proof at trial, the moving party need

23   only prove that there is an absence of evidence to support the non-moving party's case." *In re*

24   *Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex,* 477 U.S. at

25   p. 325).  If the moving party meets its initial burden, the burden shifts to the non-moving party to

26   present evidence establishing the existence of a genuine dispute as to any material fact.  *See*

27   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). To

28   overcome summary judgment, the opposing party must demonstrate a factual dispute that is both

material, i.e., it affects the outcome of the claim under the governing law, *see Anderson,* 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir.1987). In order to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at p. 587 (citation omitted).

A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987).

### IV. Discussion

In this action, Defendants seek a determination that Nationwide, Peerless, and Golden Eagle covered the Truck at the time of the accident and that any or all of them are responsible for paying the judgment returned in the underlying action. For purposes of the motion presently before the Court, Defendants seek only partial summary judgment against Nationwide.

According to the Nationwide Auto Policy and the Peerless Auto Policy, the respective insurers must pay all sums that an insured must pay as damages because of bodily injury or property damage, caused by an accident, and resulting from use of a covered auto. Doc. 46-6 at 26; Doc. 67-4 at 282. There is no dispute that the Truck was involved in an accident that caused bodily injury and property damage. Plaintiff's Response at ¶ 32. There is also no dispute that the Truck, for purposes of the Nationwide Auto Policy, was a covered auto because the policy noted that "any auto" is a covered auto. Doc. 64-6 at 13.[3] For purposes of the motion presently pending

---

[3] The Truck was listed on the schedule of covered autos for the Peerless Auto Policy.

1  before the Court, the only question remaining is whether Mr. Garay was "an insured" within the

2  meaning of the Nationwide Auto Policy on October 23, 2011.

3    As noted in the Court's prior order, Defendants contend that Gerardo Garay is an insured

4  under the omnibus clause of the Nationwide Auto Policy; i.e., that on October 23, 2011 (1) HFS

5  owned or borrowed the Truck, and (2) Gerardo Garay used the Truck with the permission of

6  HFS. *See* Doc. 64-6 at 26. Nationwide contends, among other things, that HFS was no longer the

7  owner of the vehicle – for purposes of the omnibus clause – after it complied with California

8  Vehicle Code §§ 5600, 5602, and 5900, in releasing liability as to the Truck after the bona fide

9  sale to JSA. The Court has fully read and reviewed the briefings submitted by Defendants,

10  Nationwide, and Peerless.

11  **1. Was the Truck owned or borrowed by HFS on October 23, 2011?**

12    The parties each ask the Court to look to a different source of law in determining the

13  meaning of the term "own" as used in the Nationwide Auto Policy. Defendants direct the Court

14  to several California Vehicle Code sections, whereas Nationwide draws the Court to the

15  California Insurance Code.  As this Court will explain, both codes inform the reading of an

16  omnibus clause in an insurance provision. As Nationwide correctly notes  the omnibus clause of

17  the Nationwide Auto Policy is modeled after California Insurance Code § 11580.1(b)(4), which

18  requires that an insurer provide insurance coverage to any person using a vehicle owned or

19  leased by the named insured with the permission of the named insured.[4] It also correctly notes

20  that the Insurance Code does not define the term "own" or any derivation thereof. *See* Cal. Ins.

21  Code § 11580.06. However, § 115080.1(b)(4) does specifically provide that the term " 'owned

22  motor vehicle' includes all motor vehicles described and rated in the policy."  Defendants direct

23  the Court to the Vehicle Code's definition of owner:

24     An "owner" is a person having all the incidents of ownership, including the legal
25     title of a vehicle whether or not such person lends, rents, or creates a security
      interest in the vehicle; the person entitled to the possession of a vehicle as the

26

---

27  [4] Based on the language of the Nationwide omnibus clause as compared to the Insurance Code as well as because
   the Insurance Code section at issue sets the minimum requisites for automobile insurance, this Court concludes that
28  the omnibus clause included in the Nationwide policy is coextensive by requirement of § 11580.1(b)(4) of the
   Insurance Code.

purchaser under a security agreement; or the State, or any county, city, district, or political subdivision of the State, or the United States, when entitled to the possession and use of a vehicle under a lease, lease-sale, or rental-purchase agreement for a period of 30 consecutive days or more.

Cal. Veh. Code § 460. Section 460 provides that an "owner" is a person with all incidents of ownership or a person entitled to possession of the vehicle. For purposes of Vehicle Code section 460, an automobile may well have multiple "owners." *See Springmeyer v. Ford Motor Co.*, 60 Cal. App.4th 1541, 1571-1572 (Cal. Ct. App. 1998). The Vehicle Code sections also defines "Legal Owner" and "Registered Owner." "A 'legal owner' is a person holding a security interest in the vehicle…." Cal. Veh. Code § 370. "A 'registered owner' is a person registered by the department as owner of a vehicle." Cal. Veh. Code § 505.

This Court is not the first to have determined the definition of "owned vehicle" for purposes of Insurance Code § 11580.1. "The elements of ownership and permission essential to coverage under an omnibus clause have been specialized by case law. The ownership of the offending automobile by the named insured must be that which subjects him to liability under Vehicle Code s[ection] 17150." *Uber v. Ohio Cas. Ins. Co.*, 247 Cal.App.2d 611, 617 (Cal. Ct. App. 1967)); *but cf. Jordan v. Consolidated Mut. Ins. Co.*, 59 Cal.App.3d 26, 40 (Cal. Ct. App. 1976) ("[T]he numerous cases interpreting the word permission as used in Vehicle Code section 17150 are not controlling of the interpretation of the word 'permission' as used in Insurance Code section 11580.1 or in the omnibus clause of an automobile liability insurance policy.") Vehicle Code section 17150 imposes liability upon "[e]very owner of a motor vehicle … for the death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of a motor vehicle … by any person using or operating the [vehicle] with the permission, express or implied, of the owner."  Generally, an "owner" under section 17150 is the registered owner. *Campbell v. Security Pac. Nat. Bank*, 62 Cal.App.3d 379, 385 (Cal. Ct. App. 1976); *accord Savnik v. Hall*, 74 Cal.App.4th 773, 741 (Cal. Ct. App. 1999); *see also Yoshida v. Liberty Mut. Ins. Co*., 240 F.2d 824, 827 (9th Cir. 1957) (holding that the owner of an automobile is generally the registered or legal owner).

It is undisputed that HFS was owner of the Truck in the period from its purchase of the Truck in 2003 to the attempted transfer of the truck to JSA in March of 2010; HFS had all the incidents of ownership, HFS had the right to possess the vehicle and in fact possessed the vehicle, and was the registered owner.

"California has laid down the rule that until the [transfer of ownership] formalities required by the Vehicle Code are met, the vendor of an automobile[,] … for purposes of omnibus coverage in a policy … issued to the vendor[,] is still the owner and the vendee is driving with his permission." *California State Automobile Assn. v. Foster*, 14 Cal.App.4th 147, 150 (Cal. Ct. App. 1993) (quoting *Harbor Ins. Co. v. Paulson*, 135 Cal.App.2d 22, 25–26 (Cal. Ct. App. 1955)). "The result of the failure of a vendor in this state to meet the requirements of the Vehicle Code is that, while as between him and his vendee, the latter becomes the owner of the vehicle, as to third parties who are injured by the vehicle still registered to him as owner, the vendor remains the owner and the vendee is using the vehicle with his permission." *Harbor*, 135 Cal.App.2d at 28. Assuming that the Vehicle Code is appropriately applied in determining whether HFS was owner of the Truck on October 23, 2011 for purposes of the Nationwide Auto Policy, Defendants would be entitled to summary judgment only if (1) HFS did not transfer the Truck in compliance with the Vehicle Code prior to the date of the accident or (2) HFS did transfer title in compliance with the Vehicle Code but then the Truck was properly transferred back to HFS.

Generally, in order to transfer title or any interest in or to a vehicle, at least one of two requisites must take place: the transferor must have either (1) endorsed and delivered the certificate of ownership to the transferee and transferee have delivered or mailed the certificate to the DMV,[5] or (2) delivered or mailed to the DMV the appropriate documents for registration or transfer of registration of the vehicle. Cal. Veh. Code § 5600. An exception exists to the second option.[6] A seller is permitted to bypass the requirements of section 5600 (delivery to the DMV of

---

[5] California Vehicle Code section 5902 requires a "transferee of a properly endorsed certificate of ownership" to "forward the certificate along with the proper transfer fee to the [DMV] and thereby make an application for transfer of registration" "within 10 days" of receipt of the certificate.
[6] The exception is explicit in Vehicle Code § 5600(a)(2), which closes with the language "except as provided in Section 5602."

documentation for transfer of registration) by instead satisfying section 5602. *Brennan v. Gordon Ball, Inc.*, 163 Cal.App.3d 832, 836 (Cal. Ct. App. 1985); *see also Thiel v. Mercury General Corp.*, 2011 WL 6890522, *3 (Cal. Ct. App. Dec. 27, 2011) (unpub.). Section 5602 provides, in relevant part:

> An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession of the vehicle to a purchaser is not, by reason of any of the provisions of this code, the owner of the vehicle so as to be subject to civil liability … for the parking, abandoning, or operation of the vehicle thereafter by another when the selling or transferring owner, in addition to that delivery and that bona fide sale or transfer, has fulfilled either of the following requirements:
>
> > (a) He or she has made proper endorsement and delivery of the certificate of ownership as provided in this code.
> >
> > (b) He or she has delivered to the department or has placed in the United States mail, addressed to the department … following document[]:
> >
> > > (1) The notice as provided in … Section 5900 ….

Cal. Veh. Code § 5602. Section 5900 requires an owner of a registered vehicle to notify the DMV within five days of a delivery of possession of a vehicle to another. Cal. Veh. Code § 5900. That notice must contain notice of the sale, the date of the sale, the name and address of the owner and of the transferee, and the description of the vehicle. *Id.*

In *Stoddart v. Peirce*, 53 Cal.2d 105, 115-121 (1959), the Supreme Court reviewed the predecessors to sections 5602, 5900, and 17150 of the Vehicle Code and concluded that the purposes of those sections were to "protect[] innocent purchasers and to afford identification of vehicles and of persons responsible in cases of accident and injury," and not to enlarge the number of persons responsible under 17150. It explained that—although not providing a method for transfer of title—mailing of notice of release of liability affords transferor the advantage of exemption from liability based on ownership of the vehicle until the transferee completes its registration obligation. *See Stoddart*, 53 Cal.2d at 120.

A similar issue was presented in *Uber*, 247 Cal.App.2d at 614, where multiple sales of a vehicle took place between three commercial sellers, all of which had omnibus clauses in their liability coverages. The vehicle was ultimately involved in an accident while driven by a third

1  party with the permission of the third commercial seller. *Id.* at 614. Because each of the

2  commercial sellers had failed to give notice of the sale as provided by §§ 5602 or 5900, the *Uber*

3  court found that each of the commercial sellers was "owner" of the vehicle for purposes of the

4  omnibus clause. *Id.* at 616.

5      On March 26, 2010, HFS sold the Truck to JSA for $10,000.00 and transferred

6  possession of the Truck to JSA. JSUF at ¶¶ 31, 34. The signed certificate of title was transferred

7  from HFS to JSA in the same approximate window. JSUF at ¶ 36. It does not appear that JSA

8  ever forwarded the certificate with the proper transfer fee to the DMV. A notice of release of

9  liability for the Truck, bearing the same date was provided to the DMV, containing the license

10 number and a description of the vehicle, listing JSA as the buyer and giving JSA's address, and

11 listing HFS as the seller and giving HFS's address. *See* Doc. 67-4 at 9-10. HFS appears to have

12 properly submitted notice of release of liability in compliance with the Vehicle Code. As a result,

13 HFS was not, by reason of the Vehicle Code, owner of the Truck such that it was liable for

14 operation of the vehicle by any other person. *See* Veh. Code § 5602. Because the Nationwide

15 Auto Policy omnibus clause affords coverage coextensive with Insurance Code § 11580.1(b)(4),

16 HFS ceased to be owner of the Truck for purposes of the omnibus clause when HFS properly

17 released liability in compliance with Vehicle Code §§ 5602 and 5900. *See Uber*, 247 Cal.App.2d

18 at 617.

19      Defendants suggest that even assuming HFS was no longer owner of the Truck after the

20 transfer to JSA, it again became owner when it JSA returned possession. No evidence has been

21 submitted that would tend to indicate that HFS repurchased the Truck after the sale to JSA.[7]

22 JSA's transfer of possession to HFS for purposes of selling the Truck on behalf of JSA does not

23 impact the ownership of the Truck.

24      Defendants further argue that HFS should be equitably estopped from denying that it is

25 owner of the Truck because it held itself out as owner when it attempted to transfer the Truck to

26 Copart and again when it sold the vehicle to Vicente. Doc 68 at 9. This argument was not

27 ─────────────

28 [7] To the extent that Defendants might contend that JSA actually transferred an ownership interest back to HFS, that suggestion is not supported by the evidence before the Court.

presented until Defendants' reply. In addition to not being properly before the Court, *Ceja-Corona v. CVS Pharmacy, Inc.*, 2015 WL 1276695, *5 (E.D. Cal. Mar. 17 2015) (citing, *inter alia*, *State of Nev. V. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990), Defendants' argument is without merit. Defendants correctly articulate the requirements of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon; (3) the party asserting estoppel must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. Doc. 68 at 10 (citing *Crestline Mobile Homes Mfg. Co. v. Pacific Finance Corp.*, 54 Cal.2d 773, 778 (1960)). Then Defendants elected not to discuss those requirements. Conspicuously absent in this instance is any reliance by Defendants on any representation by HFS that it was owner of the Truck.[8] Based on the evidence and argument presented, the Court will not apply equitable estoppel to preclude HFS or Nationwide from denying that HFS was not owner of the Truck on October 23, 2011.

Next, Defendants argue that HFS was borrower of the Truck on October 23, 2011. The California Supreme Court, while discussing whether an individual was a borrower of a vehicle within the meaning of an automobile insurance contract, provided a definition of borrower: "someone who, with the permission of the owner, has temporary possession of the property for his own purposes; possession connotes the right to dominion or control." *Home Indemnity Co. v. King*, 34 Cal.3d 803, 813 (1983) (citation omitted) *accord City of Los Angeles v. Allianz Ins. Co*, 125 Cal.App.4th 287, 291-292 (Cal. Ct. App. 2004); *see Travelers Property Cas. Co. of Am. V. LK Tansp., Inc.*, 3 F.Supp.3d 799, 803 (E.D. Cal. 2014). HFS transferred possession of the Truck to Vicente prior to the date of the accident. HFS did not exercise dominion or control over the truck on the date of the accident. HFS was not a borrower of the Vehicle on the date of the accident.

---

[8] In fact, the Certificate of Title reflecting that HFS was registered owner, appears to have never been transferred to Vicente. Plaintiff's Response at ¶ 30. The only time that HFS appears to have transmitted the certificate of title after the Truck was sold to JSA was for purposes of the attempted resale through Copart. *See* Defendants' Response at ¶ 57; Plaintiff's Response at ¶ 24. The Certificate of Title provided to Copart appears to be the same physical certificate initially provided to JSA. It has a single dated signature releasing interest in the vehicle. That release is dated March 26, 2010, the approximate date that the bona fide sale of the Truck to JSA took place.

Defendants are not entitled to partial summary judgment because the evidence submitted, taken in the light most favorable to Nationwide, indicates that HSF was not owner or borrower of the Truck on October 23, 2011.

### V. Order

Based on the foregoing, IT IS HEREBY ORDERED that Defendants' motion for partial summary judgment against Nationwide is DENIED.

IT IS SO ORDERED.

Dated:   February 22, 2016         _____

SENIOR  DISTRICT  JUDGE