1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY,

          Plaintiff,

    v.

GERARDO ALANN FELIX GARAY;
MARY GARCIA ROJAS; CYNTHIA
ANN ROJAS; CHRISTINA
MONTECINO; GABRIEL ROJAS;
ANITA ROJAS, individually and as a
Guardian ad Litem for BRANNON
JONAH CLAYTON; and DOES 1 to
50, inclusive,

          Defendants.
_____/

MARY GARCIA ROJAS; CYNTHIA
ANN ROJAS; CHRISTINA
MONTECINO; GABRIEL ROJAS;
and ANITA ROJAS,

          Counterclaimants.
    v.

NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY;
PEERLESS INSURANCE
COMPANY; GOLDEN EAGLE
INSURANCE CORPORATION

          Counterdefendants.
_____/

1:14-cv-00138-AWI-JLT

**ORDER ON COUNTERCLAIMANTS'
AND COUNTERDEFENDANTS'
CROSS MOTIONS FOR SUMMARY
JUDGMENT**

**I. Introduction**

Counterclaimants Mary Garcia Rojas, Cynthia Ann Rojas, Christina Montecino, Gabriel Rojas, Anita Rojas, individually and as guardian ad litem for Brannon Clayton ("Counterclaimants"), maintain this action seeking to enforce against Peerless Insurance Company ("Peerless") and Golden Eagle Insurance Corporation ("Golden Eagle") the judgment obtained against Gerardo Garay regarding an automobile accident occurring on October 23, 2011, involving a 2001 Dodge flatbed truck ("the Truck"). Peerless and Golden Eagle issued a commercial automobile policy and umbrella policy to JSA Company ("JSA") and Ten Star Farms., Inc. ("Ten Star"), under which the Truck was listed as a scheduled auto on October 23, 2011, the day of the accident. In order for Counterclaimants to prevail, (1) JSA or Ten Star (or both) must have been owner of the Truck for purposes of the Peerless commercial auto policy on October 23, 2011, and (2) Gerardo Garay must have been using the Truck with JSA or Ten Star's permission. In other words, the use of the Truck must fall within the omnibus clause of the commercial auto policy for Counterclaimants to prevail in this action. Counterclaimants move for summary adjudication as to the ownership issue and Peerless and Golden Eagle move for summary judgment. As will be explained in greater depth below, reasonable disputes of material fact preclude the Court from determining either issue. As a result, both parties' motions will be denied.

**II. Background**

This Court outlined the purchase history of the Truck, the structure of the policies involved, and the underlying automobile accident in Document Number 76. Peerless has supplemented the record with information regarding the structure of JSA and its successor, Ten Star. Otherwise, little else has changed.

In brief summary, HFS Enterprises ("HFS") is a natural gas and diesel irrigation-engine leasing and selling business, owned by Jon and Julie Schuetz. Doc. 76 at 2. JSA is a farming business owned in whole or in part by Stanley Antongiovanni. Counterclaimants' Response to Peerless' Statement of Uncontroverted Facts, Doc. 85-1 ("CRPSUF") at ¶ 3.[1]

---

[1] Counterclaimants contend that JSA is owned by Stanley Antongiovanni and his wife Kathleen Antongiovanni.

In 2003, HFS purchased a 2001 Dodge flatbed truck. That truck was sold to JSA on March 26, 2010, for $10,000.00. Peerless and Golden Eagle now allege that the Truck was actually purchased by John Antongiovanni, Jr., son of Stanley and Kathleen Antongiovanni. Doc. 80-4 at 9 (check from John S. Antongiovanni, Jr.).[2] At the time that John Antongiovanni Jr. purchased the Truck, he did not work for JSA. Joint Statement of Undisputed Facts, Doc. 80-2 ("JSUF") at ¶ 23. However, the bill of sale named HSF as the seller and JSA as the buyer. Doc. 76 at 2; Doc. 80-4 at 7. On the date of purchase or shortly thereafter, the Truck "was driven to JSA's office on Van Horn Road in Bakersfield."  CRPSUF at ¶ 20. On the date of the sale, "HFS submitted a notice of release of liability for the Truck, listing JSA as the buyer." Doc. 76 at 2; Doc. 80-4 at 28; *see* CRPSUF at ¶ 21.

On March 31, 2010, Kevin Antongiovanni, then-manager of JSA, took the certificate of title for the Truck to the Department of Motor Vehicles ("DMV") office in Bakersfield, California. CRPSUF at ¶ 22; *see* JSUF at ¶ 23. He "paid the $363 vehicle registration fee for the truck on JSA's behalf, which the DMV accepted." JSUF at ¶ 33. However, Kevin Antongiovanni never completed any application for transfer of title to JSA or to Stanley Antongiovanni. CRPSUF at ¶24. For whatever reason, title did not transfer from HFS to JSA. CRPSUF at ¶ 24. DMV records never reflected that JSA was registered owner of the Truck.

Approximately two weeks after JSA's purchase of the Truck, John Antongiovanni, Jr. informed HFS that the truck was too small and requested a refund. CRPSUF at ¶ 25; JSUF at ¶ 34. HFS refused to issue a refund but agreed to attempt to resell the Truck on JSA's behalf. CRPSUF at ¶ 25; JSUF at ¶ 35. Possession of the Truck was transferred to HFS and a "for sale" sign was placed in the window. JSUF at ¶ 38; CRPSUF at ¶ 28. HFS attempted to sell the Truck for several months to no avail. JSUF at ¶ 40. At each attempted sale HFS communicated with Stanley Antongiovanni about the status of his efforts. JSUF at ¶ 40. HFS did so, at least in part, because it did not have permission to sell the Truck for a price not approved by Stanley Antongiovanni. JSUF at ¶ 41. "Eventually, HFS took the [T]ruck to a company called 'Copart, Inc.' to see if it could market and resell the [T]ruck." JSUF at ¶ 42. At that point HFS called JSA

---

[2] Counterclaimants contend that JSA reimbursed John Antongiovanni Jr. for purchase of the truck. CRPSUF at ¶ 15.

and requested the title and registration for the Truck. JSUF at ¶ 43. On May 2, 2011, HFS

delivered the original certificate of title to Copart. JSUF at ¶ 45; CRPSUF at ¶ 34. The truck was

not sold through Copart. JSUF at ¶ 47. It was returned to HFS where it was again put on display

for sale.

In October 2011, Vicente Felix Acosta ("Vicente Felix") of Vicente Trucking offered to

purchase the Truck for $7,500. JSUF at ¶ 48. "On October 14, 2011, Vicente Felix's son signed a

bill of sale for the truck on behalf of Vicente Trucking and paid $7,500 [in] cash to HFS." JSUF

at ¶ 49. The certificate of title was not transferred because the HFS employee responsible for the

sale could not find it. JSUF at ¶ 51. Vicente Felix was not informed that JSA had any ownership

interest in the Truck. JSUF at ¶ 53.

"Vicente Felix took the vehicle to his brother-in-law's, Luis Garay, home in Bakersfield"

to have a hitch installed for a gooseneck trailer. JSUF at ¶ 55. The hitch was installed and

Vicente Felix authorized his brother-in-law, Luis Garay, to drive the Truck and trailer to Vicente

Felix's home on October 23, 2011. JSUF at ¶ 57. Gerardo Garay, Vicente Felix's nephew,

actually drove the Truck and trailer. In route to Vicente Felix's home, Gerardo Garay and the

Truck were involved in an accident with a 2002 Honda Accord. JSUF at ¶ 57.

At the time of the accident, DMV records reflected that HFS was registered owner of the

vehicle. JSUF at ¶ 62. Julie Schuetz testified that she completed a notice of transfer and release

of liability ("NRL") for HFS' sale of the truck to Vicente Trucking on October 17, 2011.

CRPSUF at ¶ 57. The DMV has no record of receipt of that NRL. CRPSUF at ¶ 57; *see* JSUF at

¶ 62. On November 16, 2011, the DMV received an internet NRL for the Truck. JSUF at ¶ 63.

### III. Legal Standard

"A party may move for summary judgment, identifying each claim or defense – or the

part of each claim or defense – on which summary judgment is sought.  The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving

party bears the initial burden of "informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

1  admissions on file, together with the affidavits, if any,' which it believes demonstrate the

2  absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986);

3  *see* Fed. R. Civ. P. 56(c)(1)(A).

4  "Where the non-moving party bears the burden of proof at trial, the moving party need

5  only prove that there is an absence of evidence to support the non-moving party's case." *In re*

6  *Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex,* 477 U.S. at

7  325). If the moving party meets its initial burden, the burden shifts to the non-moving party to

8  present evidence establishing the existence of a genuine dispute as to any material fact. *See*

9  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). To

10  overcome summary judgment, the opposing party must demonstrate a factual dispute that is both

11  material, i.e., it affects the outcome of the claim under the governing law, *see Anderson,* 477

12  U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th

13  Cir.1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

14  the nonmoving party. *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir.1987).

15  In order to demonstrate a genuine issue, the opposing party "must do more than simply show that

16  there is some metaphysical doubt as to the material facts.... Where the record taken as a whole

17  could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue

18  for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted).

19  A court ruling on a motion for summary judgment must construe all facts and inferences

20  in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477

21  U.S. 242, 255 (1986). Nevertheless, inferences are not drawn out of the air, and it is the opposing

22  party's obligation to produce a factual predicate from which the inference may be drawn. *See*

23  *Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd,* 810 F.2d

24  898, 902 (9th Cir.1987).

25  **IV. Discussion**

26  As this Court explained in its prior order on summary judgment in this matter, the

27  omnibus clauses in the Peerless Commercial Auto Policy and in the Nationwide Commercial

28  Auto Policy afford coverage to those other than the named insured when (1) the vehicle is owned

1  by the named insured and (2) the third party uses the vehicle with the permission of the named

2  insured. This Court will summarize the determinations made in its prior order on summary

3  judgment as to Nationwide and HFS for the sake of clarity then the Court will address the

4  ownership and permission issues with regard to Peerless, JSA and Ten Star.

5  **A. Summary of Relevant Prior Determinations**

6       In this action, this Court denied Counterclaimants' motion for partial summary judgment

7  and entered a stipulated judgment in favor of Nationwide. Docs. 76 & 78. In its order, the Court

8  made the following determinations:

9       The Truck was not owned by HFS on October 23, 2011. Doc. 76 at 13. On March 26,

10  2010, or shortly thereafter, HFS submitted a NRL in compliance with the California Vehicle

11  Code to the DMV. Doc. 76 at 13. No evidence tended to indicate that the transfer of the vehicle

12  from JSA to HFS after the initial purchase was anything more than a transfer of possession. Doc.

13  76 at 13. "As a result, HFS was not, by reason of the Vehicle Code, owner of the Truck such that

14  it was liable for operation of the vehicle by any other person. *See* Cal. Veh. Code § 5602.

15  Because the Nationwide Auto Policy omnibus clause affords coverage coextensive with

16  Insurance Code § 11580.1(b)(4)[—affording insurance to the named insured or any permissive

17  user for any covered vehicle owned by the named insured—] HFS ceased to be owner of the

18  Truck for purposes of the omnibus clause when HFS properly released liability in compliance

19  with Vehicle Code §§ 5602 and 5900." Doc. 76 at 13 (citing *Uber v. Ohio Cas. Ins. Co.*, 247

20  Cal.App.2d 611, 617 (Cal. Ct. App. 1967)).

21       The Truck was not borrowed by HFS on October 23, 2011. Doc. 76 at 14. Because HFS

22  transferred possession of the Truck to Vicente prior to the date of the accident, HFS did not

23  exercise dominion or control over the truck on the date of the accident and was therefore not a

24  borrower of the truck on the date of the accident. Doc. 76 at 14 (citing, *inter alia*, *Home*

25  *Indemnity Co. v. King*, 34 Cal.3d 803, 813 (1983); *Travelers Property Cas. Co. of Am. v. LK*

26  *Transp., Inc.*, 3 F.Supp.3d 799, 803 (E.D. Cal. 2014)).

27  ///

28  ///

**B. Was JSA or Ten Star an owner of the Truck on October 23, 2011?**

The factual scenario before the Court appears to be unique. The Court has determined that the registered owner (HFS) was not an "owner" of the Truck for purposes of omnibus clause coverage because it properly gave notice of transfer and released liability. Doc. 76 at 13. However, the transferee (JSA) failed to properly transfer title of the Truck into its own name. The transferee then transferred possession, but not ownership, of the Truck to the registered owner (HFS) to sell the vehicle on the transferee's (JSA) behalf. The Court is now left to determine whether the transferee (JSA) was owner of the vehicle for purposes of the omnibus clause of its commercial auto policy.

Peerless suggests that no named insured was an owner of the Truck on October 23, 2011 and that HFS—rather than JSA—owed a duty to transfer registration to Vicente Trucking.

*1. JSA's Ownership of the Truck*

In the Court's prior order, it recognized that it was "not the first to have determined the definition of 'owned vehicle' for purposes of Insurance Code § 11580.1," setting out the minimum requirements for coverage of damage caused by a permissive user of a covered vehicle. Doc. 76 at 10. It explained that "[t]he elements of ownership and permission essential to coverage under an omnibus clause have been specialized by case law. The ownership of the offending automobile by the named insured must be that which subjects him to liability under Vehicle Code s[ection] 17150." Doc. 76 at 10 (quoting *Uber*, 247 Cal.App.2d at 617). Peerless argues that no named insured was subject to liability under Vehicle Code section 17150.

"Vehicle Code section 17150 imposes liability upon '[e]very owner of a motor vehicle … for the death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of a motor vehicle … by any person using or operating the [vehicle] with the permission, express or implied, of the owner.'" Doc. 76 at 10. The Court further noted that "[g]enerally, an 'owner' under section 17150 is the registered owner." Doc. 76 at 10 (citing *inter alia*, *Campbell v. Security Pac. Nat. Bank*, 62 Cal.App.3d 379, 385 (Cal. Ct. App. 1976)). However, the Court went on to explain that in this instance, the registered owner, HFS, is not subject to liability under Vehicle Code section 17150 (and therefore not owner for purposes of

the omnibus clause) because it was no longer owner of the Truck after it properly released liability and noticed the transfer to JSA. Doc. 76 at 13 (citing California Vehicle Code § 5602). It is undisputed that JSA was never the registered owner of the Truck. *See* JSUF at ¶¶ 31, 45, 60, 62. However, it is also undisputed that "John Antongiovanni, Jr., signed on behalf of JSA a 'Bill of Sale' that listed JSA as the buyer of the [T]ruck," JSUF at ¶ 24, that "[t]he [T]ruck was driven to JSA's office … shortly after" its purchase, JSUF at ¶ 28, and that Kevin Antongiovanni, then-manager of JSA, took the properly endorsed certificate of title for the Truck to the DMV where he paid the vehicle registration fees and unsuccessfully attempted to register the Truck on behalf of JSA, *see* JSUF at ¶¶ 32-33; Doc. 80-6 at 172-175. JSA clearly purchased the Truck and received a properly endorsed certificate of title.

Within ten days of receipt of a properly endorsed certificate of ownership, a transferee of a vehicle must "forward the certificate with the proper transfer fee to the [DMV] and thereby make application for a transfer of registration." Cal. Veh. Code § 5902. In this instance, JSA— for whatever reason—failed to properly do so. The certificate of title, properly endorsed by HFS and delivered to JSA was not forwarded to the DMV with the proper transfer fee. *See* JSUF at ¶¶ 44 ("JSA provided HFS … the original certificate of title…."), 61 ("After the accident, HFS was informed that the DMV records still showed that HFS was the registered owner"); Cal. Veh. Code § 6050 (The DMV "upon receipt of a properly endorsed certificate of ownership and the required fee shall reregister the vehicle under its registration number in the name of the new owner and new legal owner … and shall issue a new registration card and certificate of ownership…."). Now Peerless attempts to benefit from its insured's failure to comply with the California Vehicle Code; suggesting that because JSA is not registered owner that it is not subject to liability under section 17150.

As the Court indicated in its prior order, *Uber v. Ohio Casualty Ins. Co.*, 247 Cal.App.2d 611, is on point. In *Uber*, a vehicle "was subject to three transfers, each without compliance with the registration and title transfer provision[s] of [the] Vehicle Code…." *Uber*, 247 Cal.App.2d at 614.  The vehicle was first sold to British Motors by the original owner; second, the vehicle was transferred by British Motors to Fred Kirk Motors; and third, the vehicle was transferred by Fred

1  Kirk Motors to Eastside Motors. *Uber*, 247 Cal.App.2d at 614. The vehicle was then involved in

2  an accident while being driven with the express permission of Eastside Motors. *Uber*, 247

3  Cal.App.2d at 614. The *Uber* court determined that each of the above-named dealers was an

4  "owner" within the meaning of a California omnibus clause even though the transfer

5  requirements of the Vehicle Code to transfer title and registration to each had not been complied

6  with and none of the dealers was ever a "registered owner." *Uber*, 247 Cal.App.2d at 616-617. It

7  explained that "[t]he transferee of an automobile under a sale accompanied by delivery of

8  possession is deemed to be an owner thereof as to a third party injured by its use, for the purpose

9  of imposing liability under Vehicle Code s[ection] 17150, even though there is no compliance

10  with the prerequisites to transfer of title prescribed by Vehicle Code s[ection] 5600; and the

11  transferor is deemed to continue to be an owner as to such third party, for this purpose, unless he

12  complies with the prerequisites to avoidance of liability as prescribed by Vehicle Code s[ection]

13  5602." *Uber*, 247 Cal.App.2d at 615.

14      Peerless argues that JSA does not sit in the same position as any of the dealers in *Uber*

15  because each of those dealers "had possession of the auto at the time they made the transfer."

16  Doc. 86 at 26. It contends that because HFS had possession of the Truck at the time of the sale to

17  Vicente Trucking that the notice requirement applied to HFS rather than JSA. Peerless is correct

18  that the "person [transferring] physical possession of a vehicle is required to give notice of

19  transfer." Cal. Veh. Code § 5900(c).[3] However, the fact remains that JSA—not HFS—was *owner*

20

_____

21  [3] Peerless correctly notes that California Vehicle Code section 5900(a), requiring an owner to give notice, applies
only to "owners of vehicles registered" under the Vehicle Code who "deliver[] the possession of …[a] vehicle." Cal.

22  Veh. Code § 5900(a). Counterclaimants equally correctly note that California vehicle code section 5900(c) requires
the "person in possession" to give notice "[i]f the *registered* owner is not in possession of the vehicle…." Cal. Veh.

23  Code § 5900(c) (emphasis added). In this instance, the owner (JSA) did not transfer possession and the registered
owner (HFS) was in possession of the vehicle at the time of transfer. Counterclaimants suggest that because the

24  situation is of JSA's own making in failing to register the Truck as required, that section 5900 should be construed
strictly and JSA should not be permitted to escape liability based on HFS's notice of release of liability. The Court

25  will not do so. The situation before the Court is one that was clearly not anticipated by the California legislature in
drafting section 5900; it did not expect the registered owner to transfer a vehicle, comply with section 5900, and
then regain possession of the vehicle to sell on behalf of the new owner.

26      Although the language of section 5900 may inadvertently create a narrow gap (where the registered owner
is not an owner of a vehicle), the Court's reading of the purpose of that section is to require an authorized transferor

27  to give notice of transfer. Indeed, the Court's research has discovered no authority that has required a person other
than the person in possession at the time of sale to give notice of sale or transfer. In fact, the transfer provisions at

28  issue have been permissively construed on multiple occasions to accomplish their purpose. For instance, although
section 5602 appears to only apply to a "bona fide sale or transfer" of a vehicle, it has also been applied to donated

1   of the Truck for purposes of Vehicle Code section 17150 liability and omnibus clause coverage

2   until those notice requirements were complied with. Peerless fails to recognize that section 5900

3   is relevant, in this instance, only insofar as it might have allowed JSA to *release* liability under

4   section 5602(b)(1); arguing that JSA was not *required* to comply with section 5900 misses the

5   point. JSA did not cease to be owner merely because it transferred possession of the Truck.

6   JSA's liability under Vehicle Code section 17150 continued until some condition of section 5602

7   was met.[4]

8        A dispute of material fact precludes determination of the issue. Namely, a dispute exists

9   as to whether HFS mailed a NRL to the DMV on October 17, 2011.

10       Julie Schuetz has testified that on October 17, 2011, she completed a NRL for the sale of

11  the Truck to Vicente Trucking. Doc. 81-3 at 27-29. The NRL (using a DMV form) listed Vicente

12  Trucking as the "new owner" and HFS as the "seller," and provided all of the information sought

13  by the form and required by Vehicle Code section 5900(a). Doc. 81-3 at 36. On December 6,

14  2012, Ms. Schuetz testified that on October 17, 2011, she placed the notice in an envelope and

15  put it in the outgoing mail. Julie Schuetz Deposition Dec. 6, 2012 at p. 42. In a later deposition,

16  on November 17, 2014, Ms. Schuetz testified that she did not have an independent recollection

17  of the kind of envelope she placed the NRL form into. Doc. 80-6 at 111-112. A copy of the form

18  that Ms. Schuetz testified to having sent is marked "mailed 10/17/11." Doc. 81-3 at 36. The

19  DMV has no record of receipt of the NRL that Ms. Schuetz testified that she mailed on October

20

21

---

22  or gifted vehicles. *See Brown v. Fix*, 86 Cal.App.3d 809, 813 (Cal. Ct. App. 1978); *see also Bambacigno v.
    *Bodenhausen*, 88 Cal.App.3d 538, 540 (Cal. Ct. App. 1979) (holding that a transferor who provided a NRL that was

23  missing the odometer reading was not liable as an owner under the vehicle responsibility law because the notice was
    sufficient to meet the legislative intent behind the motor vehicle registration laws). The notice provisions Vehicle

24  Code are permissively construed to effectuate its purpose: to provide the DMV and the public with the information
    necessary to know the persons responsible in the case of an injury involving the vehicle. Bambacigno, 88 Cal.

25  App.3d at 540; *Brown*, 86 Cal.App.3d at 813-814. That purpose is served when an authorized transferor – regardless
    of whether he or she is owner or registered owner or agent or bailee or some other position—provides the

26  information required by section 5900.

27  [4] California Vehicle Code section 5602 requires a party seeking release liability to "deliver[] to the DMV or …
    place[] in the United States mail, addressed to the [DMV]," notice of sale or transfer, "giving the date thereof, the

28  name and address of the owner and of the transferee, and the description of the vehicle…." Cal Veh. Code §§ 5602,
    5900(a).

1   17, 2011. Doc. 80-6 at 69, 71. Rather, the DMV's records indicate that a NRL was electronically

2   filed regarding the Truck on November 16, 2011, after the accident. Doc. 80-4 at 35.[5]

3          In *Durbin v. Fletcher*, the California Fifth District Court of Appeal encountered a similar

4   situation. *Durbin v. Fletcher*, 165 Cal.App.3d 334 (Cal. Ct. App. 1985). Between December 4,

5   1980 and December 12, 1980, the vehicle at issue in *Durbin* was transferred three times and

6   involved in an accident while driven by the third transferee. *Durbin*, 165 Cal.App.3d at 337-340.

7   The vehicle was first transferred from a private owner to Fresno Datsun; Fresno Datsun

8   transferred the car to Brewer's Car Corner; and Brewer's transferred the vehicle to its employee,

9   Fletcher. While driving the vehicle, Fletcher was involved in an accident. The NLR from the

10  private owner to Fresno Datsun did not arrive at the DMV until three days after the accident,

11  *Durbin*, 165 Cal.App.3d at 338; and no correct NLR was filed regarding the transfer from Fresno

12  Datsun to Brewer's, *Durbin* at 339; however, the court determined that Brewer's complied with

13  the requirements applicable to dealers giving notice of transfer, *Durbin* at 346. The Court held

14  that the failures of the private owner and Fresno Datsun to give notice of the prior two transfers

15  were cured by "Brewer's timely compliance with [the] Vehicle Code…." *Durbin*, 165

16  Cal.App.3d at 347. In sum, prior transferors do not remain liable—regardless of their failures to

17  comply with transfer requirements—after the information necessary to determine the persons

18  liable under the owner's liability statute (Vehicle Code section 17150) is provided to the DMV

19  by way of a proper NRL. *Durbin*, 165 Cal.App.3d at 347-348.

20         Counterclaimants argue that *Durbin* only stands for the proposition that *prior* owners are

21  released from liability when a subsequent owner transmits a proper NRL to the DMV. Doc. 80 at

22  23. Because HFS is the prior owner and JSA is the subsequent owner, Counterclaimants contend

23  that HFS's NRL, naming Vicente Trucking as new owner, should not release liability on behalf

24  of JSA. The Court disagrees. As was noted by the California Supreme Court, the purpose of the

25  notice requirements is to protect innocent purchasers and to afford identification of vehicles and

26  _____
[5] Ms. Schuetz testified that when she learned about the accident she went to the DMV to confirm that the NRL that
27  she mailed on October 17, 2011, had processed. Julie Schuetz Deposition Nov. 17, 2014 at 134:5-22. When at the
    DMV, Ms. Schuetz spoke to a DMV employee who informed her that a mailed NRL could take three to six months
28  to process. Julie Schuetz Deposition Nov. 17, 2014 at 135:19-22. The DMV employee also suggested that Ms.
    Schuetz submit an electronic NRL and she did so. Julie Schuetz Deposition Nov. 17, 2014 at 135:23-136:6.

of persons responsible in cases of accident and injury. *Stoddart v. Peirce*, 53 Cal.2d 105, 117 (1959); *see also Sommerville v. Providence Washington Indem. Co.*, 218 Cal.App.2d 237, 247 (Cal. Ct. App. 1963) "(Their purpose "is not to furnish a trap whereby some unwary individual may be held liable for the action of another over whom he has no control.") Although the NRLs submitted by HFS do not provide an accurate history of the transfers between HFS, JSA, and Vicente Trucking, the NRL allegedly mailed on October 17, 2011, contained the information necessary to inform the DMV and the public of the person responsible for the Truck in the case of an accident. *See, e.g.*, *Bambacigno*, 88 Cal.App.3d at 541 (holding that failure to provide the odometer reading, although literally failing to comply with section 5900, was sufficient to release liability under section 5602 because it served the purpose of identifying the responsible party).

If Ms. Schuetz did mail the NRL on October 17, 2011, the requirements of Vehicle Code section 5602(b)(1) to release liability by giving notice as required by Vehicle Code section 5900 were met and JSA was no longer "owner" of the vehicle such that it was subject to liability pursuant to Vehicle Code section 17150. If Ms. Schuetz did not mail the NRL on October 17, 2011, then JSA remained owner for purposes of Vehicle Code section 17150.

*2. Was the Truck Owned by a Named Insured and Covered by the Operative Policy?*

Peerless next argues that the Truck was not owned by a named insured. It contends that because JSA was not a corporate entity, but the business name of Stanley (and probably Kathleen) Antongiovanni, that the Truck was actually the property of Stanley Antongiovanni rather than JSA, therefore not covered by the Peerless policy operative on the date of the accident.[6] Peerless draws the Court's attention to Peerless Commercial Auto Policy Number

---

[6] Peerless asks the Court to take judicial notice of the fact that JSA is not a corporation registered with the Secretary of State. Doc. 81-4. Under Rule 201 of the Federal Rules of Evidence, a Court may take judicial notice of "a fact that (1) is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The court may take "judicial notice of records of state agencies and other undisputed matters of public record." *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (citing, *inter alia*, *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). However, "judicial notice is inappropriate where the facts to be noticed are irrelevant." *Meador v. Pleasant Valley State Prison*, 312 F.3d.Appx. 954, 956 (9th Cir. 2009) (citing Ruiz v. City of Santa Maria, 160 F.3d 543, 548 n. 13 (9th Cir. 1998). As explained, *infra*, whether JSA is or was a corporation is irrelevant. As such its status is not a proper subject of judicial notice.

8561129, naming JSA and Stanley and Kathleen Antongiovanni as insureds and noting that the form of business was "individual." Doc. 81 at 19; *see* Doc. 80-5 at 67. That policy was issued for the period of January 1, 2011 to January 1, 2012. JSUF at ¶ 3. It listed the Truck as a "Scheduled Auto" in the list entitled "Schedule Of Covered Autos You Own." JSUF at ¶4; Doc. 80-5 at 70, 76. On February 15, 2011, upon the request of JSA, Policy Number 8561129 was canceled in favor of a Policy Number 8834978, for the period of February 15, 2011 to February 15, 2012. JSUF at ¶ 6. Peerless Policy Number 8834978 was the operative Peerless commercial auto policy at the time of the accident. The Schedule of Covered Autos for Policy Number 8834978 was identical; the Truck was listed in the policy as a covered auto. However, the named insureds included only JSA and Ten Star and the form of business was listed as "corporation." Doc. 80-5 at 142.

Peerless argues that Stanley Antongiovanni was the owner of the Truck and no evidence exists that he ever transferred the Truck to JSA or Ten Star. As a result, Peerless argues, neither named insured "owned" the Truck, regardless of the fact that it was described and rated in the operative policy in the "Schedule Of Covered Autos [The Named Insured] Own[s]." In essence, Peerless suggests that the "Schedule Of Covered Autos [The Named Insured] Own[s]" in its policy is meaningless. Peerless suggests that the schedule of covered autos is entirely unrelated to the coverage it actually affords. Peerless is mistaken.

California Insurance Code section 11580.1(b)(4), which mandates that automobile liability insurance policies afford coverage for third parties permissively using motor vehicles owned by named insureds, explains that " 'owned motor vehicle' includes all motor vehicles described and rated in the policy." On the record presented, the Court must conclude that on October 23, 2011, the Truck was a covered motor vehicle described and rated in the Peerless Commercial Auto Policy; it is an owned vehicle for purposes of omnibus coverage. *See Sentry Select Ins. Co. v. Fidelity & Guar. Ins. Co.*, 46 Cal.4th 204, 210 (2009) (A vehicle is "described and rated" when listed in a "Schedule of Covered Autos.") Peerless is required by California

1  Insurance Code section 11580.1 to afford coverage to any person using the Truck with the

2  permission of a named insured.[7]

3         Absent a showing of successful release of liability, the Truck was an owned motor

4  vehicle of a named insured.

5  *3. Conclusion*

6         Summary adjudication on the issue of whether the vehicle was owned by a named insured

7  of Peerless cannot be granted to either party because there is a dispute of material fact regarding

8  whether Julie Schuetz mailed the NRL on October 17, 2011. That is the only factual

9  determination required to determine ownership.

10  **C. Did Gerardo Garay use the Truck with the permission of JSA or Ten Star?**

11         When a transferor transfers a vehicle, he or she grants permission "not only [to] the

12  immediate transferee but also by subsequent transferees and by permittees of all such

13  transferees" until the transfer requirements of Vehicle Code section 5600 are met. *Uber*, 247

14  Cal.App.2d at 617; *accord Durbin*, 165 Cal.App.3d at 342.

15         Peerless contends that *Uber* and *Durbin* are no longer controlling because both took place

16  prior to 1970 when Insurance Code section 11580.1 was repealed then reenacted later that year.

17  (Stats.1970, ch. 300, pp. 572—574). The new section 11580.1 limits permissive user coverage to

18  those acting "within the scope of permission." *Hartford Avvident & Indemnity Co. v. Abdullah*,

19  94 Cal App.3d 81, 88-89 (Cal. Ct. App. 1979); *Jordan v. Consolidated Mut. Ins. Co.*, 59

20  Cal.App.3d 26, 40-41 (Cal. Ct. App. 1976). However, Peerless fails to identify the scope of

21  permission given when a vehicle is transferred or sold; the sale of a vehicle grants permission to

22  the purchaser and subsequent transferees and permittees to use the vehicle without restriction.

23  The "scope of permission" language added to section 11580.1(d)(4) is of no consequence as it

24  relates to the permission for use granted by JSA (or Ten Star). *See California State Automobile*

25

26  _____
[7] Moreover, any other determination would render the Peerless policy illusory and would expose the public to
    significant risk. *See also*, *Metz v. Universal Underwriters Ins. Co*., 10 Cal.3d 45, 53 (1973) ("[T]he entire

27  automobile financial responsibility law{—including Insurance Code section 11580.1(d)(4)—]must be liberally
    construed to foster its main objective of giving monetary protection to that ever changing and tragically large group

28  of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those
    highways by others.")

1   *Assn. v. Foster*, 14 Cal.App.4th 147, 150 (Cal. Ct. App. 1993) ("*Foster*") ("Until the formalities

2   required by the Vehicle Code are met, the vendor of an automobile under a conditional sales

3   agreement for purposes of omnibus coverage in a policy of public liability insurance issued to

4   the vendor is still the owner and the vendee is driving with his permission."); *see also National*

5   *Farmers Union Property & Cas Co. v. Maldonado*, 2007 WL 984128, *2-3 (Cal. Ct. App. Apr.

6   4, 2007) (unpub.) (noting that the fact that the seller, who had not complied with section 5900,

7   was a stranger to the driver of the vehicle at the time of the accident did not impact the

8   permission inquiry).

9       There is no dispute that JSA authorized HFS to sell the Truck on its behalf. JSUF at ¶ 40.

10  There is no dispute that HFS sold the Truck to Vicente Trucking with the authorization of JSA.

11  Jonathan Schuetz Deposition, Jan. 5, 2015 at 66:16-67:11. There is no dispute that Vicente Felix

12  authorized Jose Garay to drive the Truck to Vicente Felix's home on the date of the accident. *See*

13  Vicente Felix Deposition Oct. 29, 2014 at 51:7-12.  There is no dispute that Vicente Felix did not

14  expressly permit (or forbid) Gerardo Garay's use of the Truck on the date of the accident and did

15  not know that he had driven the Truck until after the accident. Vicente Felix Deposition Oct. 29,

16  2014 at 54:24 – 55:14, 57:2-9, 83:12-15, 85:6-13. In fact, Vicente Felix testified that Gerardo

17  Garay had not driven any of his vehicles before and he would not have permitted Gerardo Garay

18  to drive the Truck had he known. Vicente Felix Deposition Oct. 29, 2014 at 57:2-9. However,

19  there appears to be no dispute that Jose Garay authorized Gerardo Garay to drive the Truck to

20  Vicente Felix's house in his stead on the date of the accident.

21      Assuming that no NRL properly released liability, the chain of unrestricted permitted

22  users of the Truck is established through Vicente Felix, as a matter of law. *See Foster,* 14

23  Cal.App.4th at 150; *Uber*, 247 Cal.App.2d at 617. However, the character and scope of the

24  permission granted by Vicente Felix is not clear. The express permission granted to Luis Garay

25  was limited; Luis Garay was permitted to bring the Truck to Vicente Felix's home. Generally,

26  "where a vehicle owner entrusts his car to one person and that person in turn permits a third party

27  to drive, the third party is driving with the 'permission' of the owner both for purposes of

28  imposing vicarious liability and finding insurance coverage. *Sandoval v. Mercury Ins. Group*,

229 Cal.App.3d 1, 7-8 (Cal. Ct. App. 1991) (citations omitted). Whether permission is implied turns on whether the third party's use was or should have been within the contemplation of the owner. *Sandoval*, 229 Cal.App.3d at 9 (citing, *inter alia*, *Peterson v. Grieger, Inc.*, 57 Cal.2d 43, 52-53 (Cal. Ct. App. 1961)). It is the province of the jury to infer from the circumstances under which the permittee obtained use of the vehicle whether that permission might extend to a third party. *Sandoval*, 229 Cal.App.3d at 8. In discussing moving the Truck to Vicente Felix's home, Vicente Felix was not explicitly that Luis Garay was the *only* permitted user. Vicente Felix Deposition Oct. 29, 2014 at 85:6-13. However, Vicente Felix also testified that Gerardo Garay had never driven one of his vehicles before and that he was surprised to learn that Gerardo was driving the Truck at the time of the accident. Vicente Felix Deposition Oct. 29, 2014 at 55:6-12, 57:1-15. A jury could reasonably find that the restriction imposed by Vicente Felix was as to purpose or operator or both. A jury could also reasonably find that Vicente Felix should have contemplated Gerardo Garay's use of the vehicle. *Compare Marquez v. Enterpriase Rent-A-Car*, 53 Cal.App.4th 319, 322 (Cal. Ct. App. 1997) (holding an express prohibition of persons other than the authorized driver foreclosed the possibility of implied permission for another person to drive the vehicle); *with Peterson v. Grieger, Inc.*, 57 Cal.2d 43, 51-52 (1961) (holding that it was reasonable for a trier of fact to find implied permission where a first valet was given permission to park a vehicle and the first valet gave permission to a second valet to move the vehicle to an overflow lot because the second valet's use did not exceed the "time, purpose, or area" restrictions imposed). This question of implied permission must be decided by a trier of fact.

The above-identified disputed issue of material fact as to the scope of permission granted by Vicente Felix precludes summary adjudication on the issue of whether Gerardo Garay had permission to operate the Truck on the date of the accident.

///

///

///

1

## V. Order

2        Based on the foregoing, IT IS HEREBY ORDERED that:

3    1.   Peerless and Golden Eagle's motion for summary judgment is DENIED;

4    2.   Counterclaimants' motion for summary judgment is DENIED.

5

6    IT IS SO ORDERED.

7    Dated:   May 5, 2016                    _____

8                                            SENIOR  DISTRICT  JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28